IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02167-WYD-KMT

STEPHEN CHARLES TASSIO,

     Plaintiff,

v.

MARY MULLARKEY, individually and in her capacity as Chief Justice;
BILL RITTER, individually and in his capacity as Governor;
JOHN SUTHERS, individually and in his capacity as Attorney General; and
ROXY HUBER, individually and in her capacity as Executive Director, Jointly and
Severally,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**KATHLEEN M. TAFOYA**
**United States Magistrate Judge**

     This matter is before the court on Defendants' "Motion to Dismiss" [Doc. No. 5, filed

November 6, 2007].   Plaintiff responded to the Motion to Dismiss on November 13, 2007 [Doc.

No. 9].  No reply was filed by the Defendants.

     Also considered herein are:

     1.     Plaintiff's "Motion for Summary Judgement" [Doc. No. 10, filed November 13,

2007] to which Defendants responded on December 6, 2007 [Doc. No. 13] and Plaintiff replied

on December 10, 2007 [Doc. No. 14];

2.　　Plaintiff's "Motion for Preliminary Injunction" [Doc. No. 2, filed October 19, 2007], to which Defendants responded on November 9, 2007 [Doc. No. 8] and Plaintiff replied on  November 14, 2008 [Doc. No. 12];

3.　　Plaintiff's "Motion for Temporary Restraining Order" [Doc. No. 23, filed January 24, 2008] to which Defendants responded on January 27, 2008 [Doc. No. 27] and Plaintiff replied on February 8, 2008 [Doc. No. 31]; and

4.　　Plaintiff's "Motion for Temporary Restraining Order and Order" [Doc. No. 28, filed February 4, 2008] to which no responsive pleading has been filed.

## I.　　Background

Plaintiff, Steven Charles Tassio ("Tassio"), filed his complaint against four state officials (hereinafter "state defendants") on October 15, 2007.  ("Compl." [Doc. No. 1]).  Within four days he also filed his Motion for Preliminary Injunction.  The court is hampered in divining relevant facts by Mr. Tassio's prolix Complaint – one hundred sixty-three pages containing two hundred eighty-one separately numbered paragraphs and many more unnumbered paragraphs. However, it is clear the state of Colorado has been attempting for some time to collect unpaid income tax plus penalties and interest from Tassio for tax years 1999, 2000, 2001, 2002 and 2003 in the approximate amount of $29,051.35.  (Compl. at 29; Compl. Exh. 8)   In August, 2005, the Colorado Department of Revenue (hereinafter "Revenue") wrote Tassio requesting he file the missing tax returns. (Compl., Exh. 2)  In September 2005, Tassio responded by letter claiming that no authority existed for Colorado's system of  taxation, that "statutes" create no power to assess or collect taxes, and several more arguments typically espoused in so-called "tax

protester" cases.  *Id*.  Revenue then sent Tassio Notices of Deficiency for the tax years in question.  *Id*.  In September, 2005, Revenue sent Tassio a letter of explanation, Notices of Deficiency (which contained the procedure for protest on the reverse side) and a copy of its Explanation of Items.  (Compl., Exh. 3 and Exhibit 8)  Tassio did not avail himself of the statutory protest procedure and the state obtained deficiency judgments by operation of law which it later proceeded to execute through writs of garnishment against Tassio's wages.  Colo. Rev. Stat. 39-21-103(2) and 39-21-114(3).

Revenue again sent Tassio a Notice of additional deficiencies on October 21, 2005, and Tassio responded with another letter to Revenue.  (Compl. Exh. 3)  Again, however, Tassio did not avail himself of the administrative and judicial protest procedure and the state ultimately obtained a judgment which it proceeded to execute through writ of garnishment against his wages.  Having not administratively or judicially challenged the judgments, it appears Mr. Tassio did not know the judgments had entered until he was notified by his employer of the wage garnishments. (Compl. at ¶¶ 1, 10).

Mr. Tassio breaks down him claims for relief as:  "First Claim of Plaintiff:  Bill of Attainder" (Compl. at 9), claiming the Defendants caused him to be damaged financially without benefit of due process; "Second Claim of Plaintiff:  Plaintiff has always attempted non judicial settlement" (Compl. at 22); "Third Claim of Plaintiff:  Defendants threaten Plaintiff in writing" (Compl. at 24), alleging that by sending delinquency notices, notices of deficiency and advisement of the penalties for not paying the taxes or filing formal protests, the Defendants threatened Tassio and committed mail fraud and extortion; "Fourth Claim of Plaintiff:  RICO

Violations" (Compl. at 29), alleging the IRS (who is not named as a defendant) and the state (also not named as a defendant) engaged in acts of extortion to force Tassio to pay taxes and fraudulently used the mail to promote the extortion conspiracy; "Fifth Claim of Plaintiff: Defendants Libel of Plaintiff" (Compl. at 30), concerning the publication of plaintiff's name as a tax delinquent on a Revenue web site; "Sixth Claim of Plaintiff:  Defendants admission of operating in defiance of Constitution" (Compl. at 32), alleging that the state of Colorado is not acting as a "republican form of government" and that separation of powers is non-existent in Colorado, (Compl at 57), actively constituting treason (Compl. ¶ 105) because the "judge and jury [act] as the mouth piece of the legislature." (Compl. at 61); and, "Seventh Claim of Plaintiff: Plaintiff able to be damaged by Defendants only due to unlawful structure of State of Colorado" (Compl. at 64) alleging he has been "ruined financially, professionally and in business by the Bill of Attainder and the libel surrounding the said Bill of Attainder" (Compl. at 64-65) and the "actions of Defendants operating in harmony to create a despotic environment" (Compl. at 65).

## II.    Standard of Review

Plaintiff Tassio is proceeding *pro se*.  The court will, therefore, "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers").  The court will liberally construe Mr. Tassio's pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Nevertheless, it remains the plaintiff's responsibility to provide the court with pleadings which at least make a

good faith attempt to follow the Federal Rules of Civil Procedure and the Local Rules of Practice. *See, i.e., Toth v. Gates Rubber Co.*, 2000 WL 796068, *8 (10th Cir. 2000).

It is not the Court's duty to search voluminous pages of gibberish for statements which may support a claim or a remedy. *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). A *pro se* litigant must comply with the fundamental requirements of the Federal Rules of Civil Procedure and plaintiff's *pro se* status does not entitle him to application of different rules. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (Plaintiff's "difficulties are those faced by many plaintiffs who nonetheless manage to file suit in a timely manner."); *Castaldo v. Denver Pub. Schs.*, 2007 WL 2472064, *2 (D. Colo. Aug. 28, 2007).

### A.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007); *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) Further, the court is to make all reasonable inferences in the plaintiff's favor.

*Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002).  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.

    The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved.  *See* Fed. R. Civ. P. 8(a); Hall, 935 F.2d at 1110.

### B.    Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2006); *see Anderson*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (*citing Celotex*, 477 U.S. at 325).  The nonmoving party may not rest

solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006); *Anderson*, 477 U.S. at 249 (on summary judgment, the court is not permitted "to weigh the evidence and determine the truth of the matter;" court's role is limited "to determin[ing] whether there is a genuine issue for trial"). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (*citing Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (*citing Concrete Works*, 36 F.3d at 1517).

### C.  Injunctive Relief

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established. *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964). The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). "[T]he procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction" under Fed. R. Civ. P. 65(a). *Emmis Communications Corp. v. Media Strategies, Inc.*, 2001 WL 111229, *2 (D. Colo. Jan. 23, 2001).

To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). The plaintiff's right to relief must be clear and unequivocal. *Penn*, 528 F.2d at 1185.

### III. Legal Analysis

#### A. Fed. R. Civ. P. 8

Rule 8(a) requires that a plaintiff's complaint contain "a short and plain statement" of the grounds upon which his claim is based, a short and plain statement that he is entitled to relief, and a demand for judgment. *See* Fed. R. Civ. P. 8(a). Rule 8 by its language establishes "a ceiling (the complaint must be no more than 'a short and plain statement')" and not "a floor (the complaint must at least be a 'short and plain statement')." *See Toevs v. Reid,* 2008 WL 598287, 1 (10th Cir. 2008) (unpublished); *Frazier v. Ortiz*, 2007 WL 10765, 2 (10th Cir. 2007) (unpublished), *cert. denied*, --- U.S. ----, 127 S. Ct. 3011, 168 L.Ed.2d 735 (2007) (citing *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

Rule 8's language is perhaps more aspirational than descriptive of pleading practice. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center,* 492 F.3d 1158, 1160 (10th Cir. 2007). However, "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."

*Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). In addition to being short and concise, however, a pleading must be specific enough to give the defendants in this case fair notice of what the plaintiff's claims are and the grounds upon which they rest.

Most of the cases interpreting an overly long complaint involve *pro se* litigants who are not legally trained, such as in this case. Generally, the problem with the proposed pleading is not just that it is long, but that it is unintelligible, resulting in a pleading very prejudicial to the opposing party charged with responding. *See, i.e. Nasious* at 1162 (*pro se* prisoner); *Williams v. City of Colorado Springs*, 176 F. 3d (10th Cir. 1999) (same); *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (*pro se* civilian).

Mr. Tassio's complaint takes the term prolix to new heights. In spite of his efforts to provide an outline of his claims, it is redundant and tedious to the extreme and pleonastic to the point of being indecipherable. For instance, the Sixth Claim for Relief begins on page 32 and continues through page 64, going through Colorado's admission to the Union, congressional statements from 1861, the governor's early duties, and on and on *ad nauseam* for thirty-two pages, many of them containing large blocks of single spaced quotations. The complaint "contains frivolous and groundless tax protester rhetoric that has been rejected repeatedly by this and every other court that has considered it." *Scheckel v. United States,* 2005 WL 3434149, 2 (N.D. Iowa, 2005)

It would be utterly impossible for the state defendants to respond to such a tome. For this reason alone, the plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 8. However, since there is a high risk that plaintiff will simply trim his complaint of "some"

superfluous verbage, this court chooses to address the other substantive issues presented in the state defendants Motion to Dismiss, as well.

### B. Jurisdiction

At the core of all Tassio's Claims for Relief is his challenge to the state tax law system, regardless of the penumbra under which his claims are couched. Boiled to its bones, the Complaint is that Tassio did not receive due process when tax delinquency judgments were entered against him in state court proceedings which opened the door to garnishment of his wages.

Tassio lacks standing to actually challenge the Colorado state income tax laws in this federal forum pursuant to the Tax Injunction Act (the "TIA"). Title 28 U.S.C. § 1341. The TIA forbids federal courts from exercising jurisdiction over certain kinds of claims involving state taxation, stating, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Id.* The Colorado process for notice of deficiency, requirement of timely protest, executive director hearing, and de novo judicial review in a State district court has been determined to satisfy due process, providing the taxpayer with a plain, speedy and adequate remedy for a full and fair opportunity to challenge both the amount of tax and any irregularities in the process at Revenue. *Liebhardt v. Department of Revenue*, 229 P. 2d 655, 657-59 (1951). The TIA is first and foremost a vehicle "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Arkansas v. Farm Credit Serv.*, 520 U.S. 821, 826 (1997) (*quoting Rosewell v. LaSalle Nat'l Bank*, 450 U.S.

503, 522 (1981)). The TIA "reflects a congressional concern to confine federal court intervention in state government." *Arkansas v. Farm Credit Svc.,* at 826-27.

The ramifications of Tassio's choice not to engage in the statutory process for objection to Notice of Delinquency in the Colorado state courts, is that tax judgments were entered against him. Revenue later garnished Tassio's wages to collect on the judgments. In addition to the TIA, the fact that a review of a state court final judgment is necessarily in play, the specter of the *Rooker-Feldman* doctrine is also raised. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). The doctrine is confined to cases, like this one, where the state-court loser filed suit in federal court after the state proceedings became final. *Id.* at 291; *Sheriff v. Accelerated Receivables Solutions, Inc*., 2008 WL 2487920, at *3 (D. Wyo. June 23, 2008)(unpublished). *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006)(holding that "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended")(quoting *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24-25 (1st Cir.2005)); *see also Wallin v. Arapahoe County Det. Facility*, 244 F. Appx. 214, 220 (10th Cir. 2007) (finding where the time to take an appeal from state court default judgment "passed well before" plaintiff filed his complaint, "the default judgment is final for *Rooker-Feldman* purposes"). Tassio, of course, filed this federal case

11

subsequent to the entry of the state court judgments, after the state began execution of the judgments by garnishment.

The claims brought by Tassio in this federal case are "inextricably intertwined" with the state court judgments for Tassio's tax deficiency, as defined in *Feldman*. *Feldman's* "inextricably intertwined" language broadened the reach of the *Rooker* principle to include those plaintiffs who knew better than to ask that the district court declare the state judgment null and void, but who in essence sought just such relief under cloak of constitutional claims. As Justice Marshall defined in his concurring opinion in *Pennzoil v. Texaco Inc.*, 481 U.S. 1, 23 (1987):

> [I]t is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.*

Tassio is challenging his state court process in every claim for relief. Only if the state court judgments and garnishment proceedings were overturned would Tassio's claims have any marginal chance for success. As long as they stand, he lacks standing and none of his claims contain facts sufficient to overcome a Rule 12(b)(6) dismissal. Therefore, his entire complaint should be dismissed for lack of jurisdiction on these grounds. Recognizing, however that the *Rooker-Feldman* doctrine is not universally applauded, this court finds that the plaintiff has failed to state claims upon which relief could be granted as to each of his individual claims, as well.

### C.    Individual Claims for Relief

### 1.    First Claim for Relief

It is unclear to the court exactly which legal process Mr. Tassio is claiming is an unlawful Bill of Attainder.  Tassio's First Claim for Relief appears to launch an attack on the entirity of the Colorado state income tax system which he claims caused him to be damaged financially without benefit of charge or trial.  Tassio claims the whole process is prohibited by the constitution including obtaining a deficiency judgment against him and then executing it through garnishment.  The court is, therefore, not clear whether it is the requirement to file a state income tax return, the process for determination of the state tax liability if a resident refuses to file a state income tax return, the process for obtaining a judgment when a tax deficiency is not properly contested or the ultimate remedy of garnishment after a tax judgment has entered that Mr. Tassio claims constitutes a Bill of Attainder.

A "bill of attainder" within meaning of the Bill of Attainder Clause of the Constitution is a legislative act that applies either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. U.S.C.A. Const. Art. 1, § 9, cl. 3.  *United States v. Lovett*, 328 U.S. 303, 315 (1946).  *See Fry v. United States,* 72 Fed. Cl. 500, 506 (2006)  The proscription against bills of attainder reaches only statutes that inflict punishment on the specified or isolated individual or group.  *Selective Service System v. Minnesota Public Interest Research Group* , 468 U.S. 841, 851-852 (1984).  The tax laws enacted by the state of Colorado affect <u>all</u> residents of Colorado, not just Mr. Tassio.

Mr. Tassio's underlying objections to the garnishment of his wages to satisfy a tax judgment as a bill of attainder, follow basically a four step approach: 1) The federal tax laws are unconstitutional; 2) the requirement to file a state tax return is only triggered when an individual is required to file a federal tax return, and since the federal tax laws are unconstitutional, Tassio was not required to file either a federal tax return or a state tax return; 3) since Tassio was not required to file a state tax return, the procedure to protest a tax deficiency did not apply to him and the state should not have been entitled to acquire tax judgments as a matter of law; and, 4) since the tax judgments were improper, the process of post-judgment garnishment to collect the debt was a wrongful deprivation of Tassio's rights. Legally, Mr. Tassio fails at each step of the process to state a claim upon which relief can be granted.

### a.    Federal Income Tax Laws

The underlying premise for Claims One, Three, Four and Five is that the United States' federal system of income taxation is unconstitutional and, since the statute requiring the filing of a Colorado state income tax return hinges on a potential taxpayer's requirement for filing a federal tax return, (*see* Colo. Rev. Stat. § 39-22-601(1)(a)), Tassio argues substantively that he was not required to file tax returns in Colorado for the years at issue.

The Court notes in the first instance that the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201, forbid suits for the purpose of restraining the assessment or collection of any federal tax. *See Bob Jones Univ. v. Simon,* 416 U.S. 725, 732 n.7 (1974); *Porter v. Fox*, 99 F.3d 271, 274 (8th Cir. 1996). Further, Plaintiff's general attack on the constitutionality of the Internal Revenue Code is without merit as a matter of law. Since the

ratification of the Sixteenth Amendment to the Constitution, the constitutionality of the income tax laws has been repeatedly upheld. *Brushaber v. Union Pacific R. R. Co.*, 240 U. S. 1 (1916); *Philips v. Commissioner*, 283 U.S. 589, 595 (1931); (U.S. may collect taxes by summary proceedings); *Acker v. Commissioner*, 258 F.2d 568, 575 (6th Cir. 1958); *Swallow v. United States*, 325 F. 2d, 97, 98 (10th Cir. 1963); *Hartman v. Switzer*, 376 F. Supp. 486, 489 (W.D. Pa. 1974).  It is now well settled that the income tax laws are not unconstitutional under the due process clause of the Fifth Amendment, nor are they unconstitutionally defective because of discriminatory progressive tax rates. *Swallow* at 98; *Brushaber*, at 1 n.1.

### b.    Colorado State Income Tax Laws

In addition to the bar via the TIA to challenge state court taxing regulations and statutes in this federal district court,  principals of comity render this an improper forum for a challenge to the state's income tax system, as well.  In *Younger v. Harris*, 401 U.S. 37, 44 (1971), the Supreme Court of the United States articulated some of the principles and policies that underlie the "notion of 'comity'" that exists between our national and state governments. This

> notion of  "comity" ... is [ ] a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.  This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." ... What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44-45.

A bill of attainder necessarily seeks to restrict the application of a statute or other legislative activity. When that legislative function is the collection of revenue through the implementation of a taxing regime, however, both the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201 on the federal side and the TIA and the *Younger* doctrine on the state side, prohibit Tassio from proceeding in this forum with this claim. Tassio has chosen the improper forum for his protest.

### c. Post Judgment Garnishment

The United States and Colorado Constitutions require that a person must be afforded procedural due process, including both adequate notice and an opportunity to be heard, before he or she may be deprived of property. *Ortiz v. Valdez,* 971 P.2d 1076, 1078 (Colo. App.,1998) *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950); *Mountain States Telephone & Telegraph Co. v. Department of Labor & Employment,* 520 P.2d 586 (Colo. 1974).

Once judgment has been entered against a defendant, including a proper default judgment as happened in this case when Tassio did not avail himself of the state law remedies explained in his multiple Notices of Deficiency, no additional notice or hearing is constitutionally necessary to execute or levy upon, or garnish the judgment debtor's property. *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285 (1924); *Ortiz* at 1078; *Gedeon v. Gedeon*, 630 P.2d 579 (Colo. 1981); *Hexter v. Clifford*, 5 Colo. 168 (1879)(stating the same principle prior to *Endicott-Johnson*).

16

In *Endicott-Johnson*, the United States Supreme Court said,

> The established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of judgment he must take notice of what will follow, no further notice being necessary to advance justice.

*Endicott-Johnson*, 266 U.S. at 289. *See also Ortiz* at 1078 (citing above).

Therefore, for lack of standing and because there is no legal basis for a claim on any part of the state tax law process, Claim One fails to state a claim upon which relief can be granted which is plausible on its face.

## 2. Second, Sixth and Seventh Claims

Tassio's Second Claim for Relief, clearly does not state a claim which is cognizable under any set of facts since no person is required to settle any disputed issue; the fact that some persons are not amenable to settlement is why lawsuits are filed.

Tassio's Sixth and Seventh Claims are likewise not cognizable under any facts set forth by plaintiff, to the extent the court can decipher them. Claims that the state is improperly constituted to allow its Executive Branch to pass legislation, especially those concerning the generation of revenue through taxation, and its judiciary to enforce violations of the legislation concern only the "generalized interest of all citizens in constitutional governance," *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217 (1974), and are an inadequate basis upon which to allow Tassio's claims to proceed. *Whitmore v. Arkansas,* 495 U.S. 149, 160

(1990).  While claims considered by this line of cases often involve how a state spends its tax dollars, they are equally applicable to how a state collects its revenue in the beginning.

To dispose of Tassio's claims Six and Seven, the court need do no more than quote the Supreme Court decision in *Allen v. Wright*, 468 U.S. 737, 754 (1984):  "This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."  *Id.  See also Schlesinger*, at 216-227; *United States v. Richardson,* 418 U.S. 166, 176-177 (1974) (taxpayer argument about how federal taxes were spent).

As noted in the Motion to Dismiss, the Complaint makes no allegations against the Chief Justice of the Colorado Supreme Court, Mary J. Mullarkey, or against Colorado Governor Bill Ritter, or against Colorado Attorney General John W. Suthers, other than as set forth in paragraphs 110 and 113, both of which are contained under the rubric of the Seventh Claim for Relief for which the court finds the plaintiff has failed to state a claim upon which relief can be granted. Those allegations consist of an alleged failure of the Chief Justice to keep the Judicial Branch of Colorado state government coextensive with the Legislative and Executive Branches (Compl.  ¶110),  the Governor's role as Chief Executive of the State (Compl. ¶113), and of the Attorney General's alleged role as legal advisor to the Governor.  *Id.*  There are no allegations whatsoever of any action personally taken by any of these three Defendants in any of Tassio's claims.  Therefore, the Complaint fails to state any claim upon which relief can be granted against these Defendants as well.

### 3.    Third and Fourth Claims for Relief.

Tassio contends in his Third Claim for Relief that the state defendants sent various documents to him through the mail which constituted mail fraud and extortion.  These are criminal violations which can only be prosecuted by the U.S. Attorney.  Fraud, of course, can support a civil action, however the facts contained in Tassio's complaint do not sufficiently state a claim for fraud.  In the Fourth Claim for Relief, Tassio alleges a violation of the civil RICO statutes, utilizing the mail fraud and extortion claimed in the Third Claim as predicate acts to support a claim of conspiracy to engage in racketeering activity.

As noted *infra*, Colorado's statutory scheme mandates that if a taxpayer fails to file a timely tax return, the executive director of Revenue is empowered thereby to assess tax based on the best information then available to Revenue.  "If the tax found due is greater than the amount theretofore assessed or paid, a notice of deficiency <u>shall be mailed to the taxpayer by first-class mail</u> as set forth in section 39-21-105.5."  Colo. Rev. Stat. § 39-21-103 (emphasis added).  Thereafter,

> (2) The taxpayer may request a hearing on the proposed tax by application to the executive director within thirty days of the mailing of a notice of deficiency;
> (3) The request for hearing shall set forth the taxpayer's reasons for and the amount of the requested changes in the deficiency.

*Id.*

When a taxpayer receives a Notice of Deficiency from Revenue he must, then, as instructed on the back side of the Notice (Compl. Exh. 8), file a protest and request a hearing from the executive director within thirty days of the date of the Notice of Deficiency to challenge the tax assessed. Colo. Rev. Stat. § 39-21-103(2).

Tassio apparently is asserting in conclusory terms, that the state defendants (although none are named), by complying with the statutory provisions to notify Tassio that tax had been assessed against him, providing him with a Notices of Deficiency, and advising him of his legal rights of due process pursuant to statute, "knowingly mailed false claims to Plaintiff constituting mail fraud in violation of U.S.C.A. 18 § 1341."  (Compl. at 24; Exh. 8).  Tassio claims that "Defendants amongst themselves and or along with the IRS together absent any enabling authority and or jurisdiction constitute criminal conspiracy and extortion."  (Compl. at 27.)  These allegations are patently ridiculous and frivolous.

By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d).  *Tal v. Hogan*, 453 F.3d 1244, 1270 (W.D. Okla. 2006).  *See United States v. Hampton*, 786 F.2d 977, 978 (10th Cir. 1986) ("The object of a RICO conspiracy must be to violate a substantive RICO provision."); *Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988).  If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law. *See Condict v. Condict*, 826 F.2d 923, 927 (10th Cir. 1987) ("[A]ny claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient."); *BancOklahoma Mortgage*, 194 F.3d at 1103; *Edwards v. First Nat'l Bank, Bartlesville, Okla.*, 872 F.2d 347, 352 (10th Cir. 1989); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1151 (10th Cir. 1989); *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 927 n.2 (10th Cir. 1987).

Civil RICO, pursuant to Title 18 U.S.C. § 1962(c), makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Racketeering activity is defined in 18 U.S.C. § 1961(1) as, among other violations, "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion . . which is chargeable under State law and punishable by imprisonment for more than one year; . . ." *Id.* (emphasis added). Further, a predicate act may also be "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud) . . .". *Id.* These underlying acts are "referred to as predicate acts, because they form the basis for liability under RICO." *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999). "[A] person does not have to be formally convicted of any predicate act before liability under 18 U.S.C. § 1962[ ] may attach." *Tal v. Hogan*, 453 F.3d 1261. However, "a party must allege two acts of 'racketeering' with enough specificity to show there is probable cause the crimes were committed. *Id.*

To survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Cayman Exploration Corp. V. United Gas Pipeline Co.*, 873 F.2d 1357,1362 (10th Cir. 1989); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The predicate acts Tassio alleges the state defendants engaged in are mail fraud and extortion. To establish the predicate act of mail fraud, Tassio's complaint must contain sufficient facts supporting, "(1) the existence of a

scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991). *See United States v. Kennedy*, 64 F.3d 1465, 1475 (10th Cir. 1995).

"[A] complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). A plaintiff asserting "fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). *See* Tal v. Hogan, 453 F.3d at 1263.

> Colorado Revised Statutes § 18-3-207 provides
>
> (1) A person commits criminal extortion if:
>  (a) The person, <u>without legal authority</u> and with the intent to induce another person against that other person's will to perform an act or to refrain from performing a lawful act, makes a substantial threat to confine or restrain, cause economic hardship or bodily injury to, or damage the property or reputation of, the threatened person or another person; and
>  (b) The person threatens to cause the results described in paragraph (a) of this subsection (1) by:
>   (I) <u>Performing or causing an unlawful act to be performed</u>; or
>   (II) Invoking action by a third party, including but not limited to, the state or any of its political subdivisions, whose interests are not substantially related to the interests pursued by the person making the threat.

*Id.* (emphasis added)

The court need not examine the RICO allegation beyond the existence of the predicate acts, because taking all facts as alleged by plaintiff as true, those facts simply do not constitute

mail fraud or extortion.   Plaintiff's serpentine claim that the tax delinquency notices stated a false claim rests on his illusory allegation that Colorado does not have the legal right to assess income taxes, largely because the federal government also does not have the legal right to assess income taxes.  Mail fraud is not committed simply by sending notices through the mail, even if the recipient plaintiff  perceives them as fraudulent based upon his feelings about the federal and state taxation authorities.  There are no facts alleged in Tassio's complaint that support that the documents sent to Tassio by Revenue were false or that the  mail was used to further a scheme to defraud or obtain money or property through false pretenses.  *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th Cir. 1999).  *Dirt Hogs Inc. v. Natural Gas Pipeline Co. of America*, 2000 WL 368411, 2 (10th cir., 2000).

There are no facts alleged in Mr. Tassio's complaint which would support a claim that the state defendants were without legal authority to send tax notices to Mr. Tassio and attempt to collect income taxes in a lawful manner.  There are no facts contained in Mr. Tassio's complaint to support the Third Claim for relief that the state defendants were committing mail fraud or extortion that is plausible on its face.  Without the predicate acts, there are no facts supporting a claim of RICO violations that is plausible on its face to support Claim Four.

Because Tassio has failed to allege a sufficient claim under 18 U.S.C. 1962(c) and (d), and has failed to establish violation of any predicate acts, the subsection (d) conspiracy claim fails as a matter of law.

### 4.       Fifth Claim for Relief - Libel

In Colorado, the elements of a cause of action for defamation, whether libel or slander, are:  (1) a defamatory and false statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Williams v. District Court*, 866 P.2d 908, 911, f. 4 (Colo. 1993); *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983).

A statement is false if its substance or gist is contrary to the true facts, and reasonable people learning of the statement would be likely to think significantly less favorably about the person referred to than they would if they knew the true facts.  *Denver Pub. Co. v. Bueno,* 54 P.3d 893, 899 (Colo. 2002)  The fact that a statement may have contained some false information does not necessarily make the substance or gist of the statement itself false.  *Id.*

If the published information concerns a matter of public concern, a heightened burden applies and plaintiff is required to prove the article's falsity by clear and convincing evidence rather than by a preponderance.  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Diversified Management v. Denver Post*, 653 P.2d 1103, 1108-09 (Colo. 1982).  The United States Supreme Court has recognized the competing interest between the protection of reputation and the press' ability to engage in uninhibited, robust, and wide open debate on public issues.  *New York Times v. Sullivan*, 376 U.S. 254, 269-70 (1964); *Diversified Management,* 653 P.2d at 1105 (First Amendment and Colo. Const. art. II, § 10 require application of the heightened standard of proof).  Whether an allegedly defamatory statement is constitutionally

24

privileged is a question of law which is reviewed de novo.  *NBC Subsidiary v. Living Will*

*Center*, 879 P.2d 6 (Colo. 1994).

In this case, Tassio claims the publication of his tax delinquency on the Colorado

Department of Revenue web page (Compl., Exh. 11) was libelous.  It is uncontested that state

court judgments entered against Tassio for unpaid taxes.  The *Rooker-Feldman* doctrine

precludes this federal court from inferentially or objectively reversing the judgments of the state

court as to Tassio's undefended tax deficiency.  The Supreme Court has stated that "elementary

principles of federalism and comity" are "embodied in the full faith and credit statute, 28 U.S.C.

§ 1738."  *Growe v. Emison*, 507 U.S. 25, 35-36 (1993); *see also Parsons Steel, Inc. v. First*

*Alabama Bank*, 474 U.S. 518, 523 (1986).  The Full Faith and Credit Clause provides,

> The Acts of the legislature of any State, Territory, or Possession of the United
> States ... shall have the same full faith and credit in every court within the United
> States and its Territories and Possessions as they have by law or usage in the
> courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.  To the extent that the acts of state legislatures do not conflict with the federal

Constitution, statutes, and regulations and, thus, run afoul of the Supremacy Clause, U.S. Const.,

Art. VI, cl. 2, the federal courts are obliged to afford the "Acts of state legislatures" the same

respect that the States' <u>own courts</u> would grant those statutes.  *McDonald v. City of West Branch,*

*Michigan,* 466 U.S. 284, 288 n.7 (1984).

The publication of Tassio's name on the web site was as a result of judgments, not under

seal, obtained by statute in the Colorado state court.  Therefore, the substance or gist of the

publication that Tassio owed a specific amount of Colorado income tax (Exhibit 11) was

presumptively true and supported by the judgments of record. Based on the facts as alleged in the complaint and accepting them as true, there are not "enough facts to state a claim to relief that is plausible on its face." *Bell*, 127 S. Ct. at 1974.

### D. Other Outstanding Motions

#### 1. Injunctive Relief

Plaintiff's "Motion for Preliminary Injunction" [Doc. No. 2], Plaintiff's "Motion for Temporary Restraining Order" [Doc. No. 23] and Plaintiff's "Motion for Temporary Restraining Order and Order" [Doc. No. 28] all seek relief enjoining the state of Colorado from garnishing Tassio's wages or prohibiting the state from engaging in other activities aimed at the collection of the state's taxes.

As discussed more fully, *infra*, the TIA forbids federal courts from exercising jurisdiction over this kind of claim, stating, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Title 28 U.S.C. § 1341. The TIA prohibition specifically has been applied where the plaintiff seeks an injunction. *Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991). *See also Jefferson County, Alabama v. Acker*, 527 U.S. 423, 433 (1999) ("By its terms, the TIA bars anticipatory relief, suits to stop ('enjoin, suspend or restrain') the collection of taxes."). As also discussed *infra*, Tassio has a plain, speedy and efficient remedy in the state of which he may avail himself if he wishes to contest the state's actions. Therefore, his injunctive claims are barred in this court.

Further, Tassio has not met the requirements to obtain injunctive relief in any event. Tassio has not shown that: he will suffer irreparable injury unless the injunction issues, the injunction, if issued; would not be adverse to the public interest in the collection of revenue to support the state; and there is any substantial likelihood that Tassio would eventually prevail on the merits of the case.

### 2.    Summary Judgment.

The plaintiff's argument in support of his motion for summary judgment is predicated on the fact the state defendants have filed a Motion to Dismiss, which necessarily precedes the filing of an Answer. Fed. R. Civ. P. 12(b). Tassio argues that since the state defendants have not denied his claims in an Answer, all his claims should be deemed admitted. Rule 12(b) provides, "A motion asserting any of these defenses [including failure to state a claim upon which relief may be granted] must be made before pleading if a responsive pleading is allowed. . . .No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."

Contrary to the allegation of Plaintiff, the assertions in the Complaint have not been admitted by the defendants. Summary judgment is, therefore, improper on that basis.

### IV.    Conclusion

Arguments such as the ones advanced by Mr. Tassio in his Complaint have been considered and rejected in this circuit and throughout the country. *See, i.e.*, *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990); *United States v. Mann*, 884 F.2d 532 (10th Cir.

1989); *Charczuk v. Commissioner*, 771 F.2d 471, 472-73 (10th Cir. 1985); *United States v. Stillhammer*, 706 F.2d 1072, 1077-78 (10th Cir. 1983).

This court is confronted with a 'should be' state taxpayer who simply refuses to follow proper and legitimate means and avenues of protesting tax assessments and now improperly appeals to this federal district court to overturn the judgments entered against him in the state court proceedings and prohibit the state from garnishing his wages. *Abell v. Sothen*, 214 Fed. Appx. 743, 753-754, 2007 WL 172207, 9 (10th Cir. 2007).

Wherefore, it is hereby RECOMMENDED the District Court issue the following ORDERS:

1.     Defendants' "Motion to Dismiss" [Doc. No. 5] be GRANTED.

2.     Plaintiff's "Motion for Summary Judgement" [Doc. No. 10] be DENIED;

3.     Plaintiff's "Motion for Preliminary Injunction" [Doc. No. 2] be DENIED;

4.     Plaintiff's "Motion for Temporary Restraining Order" [Doc. No. 23] be DENIED;

5.     Plaintiff's "Motion for Temporary Restraining Order and Order" [Doc. No. 28] be DENIED.

**NOTICE:  Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections**

to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins, Co. v. Wyo. Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of July, 2008.

BY THE COURT:


s/ Kathleen M. Tafoya
KATHLEEN M. TAFOYA
United States Magistrate Judge